UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-60806-CIV-ALTONAGA/Strauss

**DEAN LUTRARIO**,

    Plaintiff,
v.

**CITY OF HOLLYWOOD,
FLORIDA**,

    Defendant.
_____/

# ORDER

**THIS CAUSE** came before the Court on Plaintiff Dean Lutrario's Renewed Motion for Preliminary Injunction [ECF No. 8], filed on May 8, 2023. Defendant City of Hollywood, Florida filed a Response [ECF No. 20], to which Plaintiff filed a Reply [ECF No. 21]. Plaintiff requests that the Court enter a preliminary injunction against Defendant City of Hollywood enjoining the enforcement of three Solicitation Ordinances, sections 122.27, 122.31, and 122.54 of the City Code. (*See* Mot. 1). The Court has carefully considered the Complaint [ECF No. 1], the parties' written submissions, and applicable law. For the following reasons, the Motion is granted.

## I. BACKGROUND

Plaintiff, a 62-year-old disabled and homeless resident of Broward County, "panhandles in the City" (*id.* 2; *see* Compl. ¶¶ 7, 30, 32) and "has been cited and arrested for panhandling along the public streets in Hollywood" (*id.* ¶ 3). When Plaintiff engages in panhandling, he "requests donations from occupants of cars" by "stand[ing] on either the sidewalk adjacent to the street, or on a median, or on the edge/shoulder of a city street and verbally request[ing] a

donation while holding a sign that requests assistance." (*Id.* ¶ 32 (alterations added)).

> If a motorist or an occupant of a stopped car signals . . . they [sic] want to give him a donation, he walks to the car and accepts it, and then quickly returns to the shoulder, sidewalk, or median and resumes holding his sign. He does not obstruct or interfere with vehicular traffic.

(*Id.* (alteration added)). As a result of his panhandling, Plaintiff "has been formally charged with violations of [the Solicitation Ordinances] on four occasions[.]" (*Id.* ¶ 35 (alterations added)).

The Solicitation Ordinances regulate the solicitation of donations in the City. (*See id.* ¶¶ 19–23). Section 122.27 bans "any person [from soliciting] donations for charitable purposes within the city without first having obtained a permit[.]" Hollywood, Fla., Code of Ordinances ch. 122, § 122.27 (2022) (alterations added).

Section 122.31 requires persons conducting solicitations to comply with certain restrictions on behavior, including "carry[ing] and display[ing] an identification card" containing "the name, address and telephone number of the solicitor as well as the name of the person or organization for whose benefit . . . the solicitor is acting[;]" and they must not "unlawfully obstruct, delay or interfere with the free movements of any person against that person's will or seek to coerce[] or physically disturb any other person[;]" "unlawfully obstruct, delay or interfere with vehicular traffic within the city[;]" "solicit door-to-door at any residence between the hours of 9:00 p.m. and 8:00 a.m.[;]" or "solicit at []or enter upon any premises within the city where a 'No Solicitation' sign is posted in accordance with the provisions of this subchapter, unless otherwise invited onto the premises for that purpose." *Id.* § 122.31 (alterations added).

Section 122.51 defines a "Right of Way Solicitor[,]" and section 122.54 makes it unlawful for "any person to act as a right-of-way panhandler or solicitor on a prohibited roadway or within 200 feet from the lateral curb or boundary line of an intersection located on the prohibited roadways identified in this section." *Id.* §§ 122.51, 122.54 (alteration added).

The penalties for violating the Solicitation Ordinances include "a fine not exceeding $500 or imprisonment not exceeding 60 days, or both." *Id.* § 122.99(A).

In the past 30 months, Plaintiff has been cited twice for violating section 122.31 and twice for violating section 122.54. (*See* Mot. 7). On September 28, 2020, Plaintiff was cited by the Hollywood Police Department ("HPD") and issued a Notice to Appear for violating section 122.54 by "panhandling and holding a sign which stated, 'Food and Water. Please Help. Anything Helps'" and "acting as a 'right-of-way-solicitor' at the intersection of two of the prohibited highways[.]" (Compl. ¶ 36 (alteration added)). "[W]hen [Plaintiff] failed to appear for his arraignment, a warrant was issued for his arrest." (*Id.* (alterations added)). Plaintiff "did not have a reliable address" and therefore "did not receive notice of the date of his court appearance[.]" (*Id.* (alteration added)). "At his first appearance hearing while he was in custody, he pleaded guilty and received a sentence of credit for time served in the county jail." (*Id.*).

On July 11, 2022, Plaintiff was again cited by HPD for violating section 122.54 by seeking donations from people in cars and holding a sign that stated, "Please help food!" and acting as a "right-of-way-solicitor" at the intersection of the same two prohibited highways. (*Id.* ¶ 37 (quotation marks omitted)). "On October 6, 2022, [Defendant] filed a Nolle Prosequi, and the charges were dismissed." (*Id.* (alteration added)).

On January 8, 2023, at the same intersection, HPD cited Plaintiff for violating section 122.31(F). (*See id.* ¶ 39). On January 22, 2023, Plaintiff was again charged with violating section 122.31(F). (*See id.* ¶ 40). On April 18, 2023, Defendant filed Nolle Prosequis, and both charges were dismissed. (*See id.* ¶¶ 39, 40).

Proceeding under 42 U.S.C. section 1983, Plaintiff asserts three claims for relief under

the First Amendment — one for each Ordinance — and asks for the following relief: (1) declarations that the Solicitation Ordinances violate the First Amendment, facially and as applied to Plaintiff; (2) a preliminary and permanent injunction prohibiting Defendant from enforcing the Solicitation Ordinances; (3) money damages; and (4) attorneys' fees and costs. (*See id.* 13).

## II. DISCUSSION

In the present Motion, Plaintiff asks the Court to issue a preliminary injunction and insists that "[t]he ongoing threat of citation and arrest has had a chilling effect on [his] exercise of his First Amendment rights[.]" (Mot. 7 (alterations added)). According to Defendant, the Motion should be denied as moot "because Plaintiff has already obtained . . . assurance that the [Solicitation Ordinances] can no longer affect his desired behavior." (Resp. 3 n.1 (alterations added)). Defendant states it is "no longer enforcing the [Solicitation Ordinances] and has already begun the formal process of repealing [them]." (*Id.* 1 (alterations added)). Defendant attaches to its Response email correspondence to the Chief of Police from the City Attorney "directing all police officers to stop enforcing the [Solicitation Ordinances]" and additional correspondence "notif[ying] the City Commissioners that [the City Attorney] is in the process of drafting an ordinance that will repeal the [Solicitation Ordinances]." (*Id.* (alterations added)).

Defendant requests denial of the Motion on mootness grounds; Defendant does not attempt to defend the constitutionality of the Solicitation Ordinances, nor does it address the requirements for injunctive relief. (*See generally id.*). Plaintiff argues his claim for injunctive relief is not moot because "[i]t is the [] actual passage of an amendment or repeal of a law that potentially moots Plaintiff's claim for injunctive relief, not [Defendant's] aspiration to do so." (Reply 4 (alterations added; emphasis omitted)). For the reasons below, the Court finds Plaintiff's request for a preliminary injunction is not moot and that Plaintiff is entitled to

injunctive relief.

### A. Mootness

Article III of the Constitution limits federal court subject matter jurisdiction to only "Cases" and "Controversies." U.S. Const. art. III, § 2. A plaintiff showing an injury traceable to a defendant's conduct and redressable by a favorable court decision presents such a case or controversy and has standing to sue. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Injuries no longer remediable by a court generally render a case moot and deprive a plaintiff of standing. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992).

Claims for injunctive relief may become moot if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur; and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Reich v. OSHRC*, 102 F.3d 1200, 1201 (11th Cir. 1997) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)); *Sec'y of Lab., U.S. Dep't of Lab. v. Burger King Corp.*, 955 F.2d 681, 684 (11th Cir. 1992) ("The test for mootness in cases such as this is a stringent one[.]" (alteration added; other alteration, quotation marks, and citations omitted)).

An important exception to the mootness rule is the voluntary cessation doctrine. Under the voluntary cessation doctrine, "a party choosing to end conduct alleged to be illegal does not necessarily deprive the tribunal of the power to hear and determine the case." *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 531 (11th Cir. 2013) (citing *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1265 (11th Cir. 2010)). "Since the defendant is 'free to return to his old ways,' he bears a 'heavy burden' of demonstrating that his cessation of the challenged conduct renders the controversy moot[.]" *Harrell*, 608 F.3d at 1265 (alteration added; first quoting *United States v.*

*W.T. Grant Co.*, 345 U.S. 629, 632 (1953); then quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

As Defendant points out, when a governmental entity or official is the defendant who engages in voluntary cessation, the government defendant is given considerably "more leeway" than a private party "in the presumption that [it is] unlikely to resume illegal activities'" (Resp. 4 (alteration added; quoting *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328–29 (11th Cir. 2004)); *see Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988) ("[C]essation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties." (alteration added)). In cases involving government actors, "the opposing party must show a reasonable expectation that the government will reverse course." *Djadju v. Vega*, 32 F.4th 1102, 1108 (11th Cir. 2022) (citing *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004); other citations omitted). The rebuttable presumption that the government will not reverse course is referred to as the *Troiano* presumption. *See Harrell*, 608 F.3d at 1266.

In such government-defendant cases, to assess whether there is a reasonable expectation of reoccurrence — and determine that the *Troiano* presumption does not apply — courts examine several factors, including whether "(i) the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate jurisdiction; (ii) the government's decision to terminate the challenged conduct was unambiguous, i.e., permanent and complete; and (iii) the government has consistently maintained its commitment to the new policy or legislative scheme" (the "*Djadju* factors"). *Djadju*, 32 F.4th at 1109 (citation omitted); *see also Walker v. City of Calhoun, GA*, 901 F.3d 1245, 1270 (11th Cir. 2018) (to determine whether "the change in conduct . . . is merely an attempt to manipulate [] jurisdiction" the courts examine "the timing of

the repeal, the procedures used in enacting it, and any explanations independent of this litigation which may have motivated it." (alterations added; citations and quotation marks omitted)).

These factors are not "exclusive[,] nor should any single factor be viewed as dispositive[.]" *Djadju*, 32 F.4th at 1109 (alterations added; citation and quotation marks omitted). "[A] court should find a case moot 'when the totality of the circumstances persuades the court that there is no reasonable expectation that the government entity will reenact the challenged policy.'" *Id.* (alteration added; citation and quotation marks omitted). In short, if the *Djadju* factors suggest that there is a reasonable expectation the government-defendant's alleged violations will reoccur, then the *Troiano* presumption does not apply, and the voluntary cessation doctrine does, so the "heavy burden" remains on the government defendant to prove that the request for injunctive relief is moot. *Harrell*, 608 F.3d at 1265 (citation and quotation marks omitted).

For the reasons explained below, the Court concludes that Plaintiff's request for a preliminary injunction is not moot. The *Djadju* factors suggest there is a reasonable expectation that Defendant will reverse course. *See Djadju*, 32 F.4th at 1109. Accordingly, the "heavy burden" remains on Defendant to prove mootness. *Harrell*, 608 F.3d at 1265 (citation and quotation marks omitted). Because the Court concludes that there can be no reasonable expectation the alleged violation will not recur and there has not been a complete and irrevocable eradication of "the effects of the alleged violation[,]" Defendant has not satisfied its heavy burden. *Reich*, 102 F.3d at 1202 (alteration added).

i. **Reasonable Expectation of Reoccurrence and the Applicability of Voluntary Cessation Doctrine**

There is a reasonable expectation of reoccurrence under the *Djadju* factors. *See Djadju*, 32 F.4th at 1109; *see also Walker*, 901 F.3d at 1270. First, Defendant's actions suggest that the

change in conduct did not result from "substantial deliberation" and was, in fact, a textbook "attempt to manipulate jurisdiction[.]" *Djadju*, 32 F.4th at 1109 (alteration added; citation omitted). Additionally, Defendant's actions were neither "permanent" nor "complete[.]" *Id.* (alteration added; citation omitted). The Court explains.

To start, the circumstances indicate Defendant is attempting to manipulate the Court's jurisdiction. The Complaint's allegations suggest Defendant was enforcing the Solicitation Ordinances as recently as January 22, 2023, when Plaintiff was charged with violating section 122.31. (*See* Compl. ¶ 39). Plaintiff filed this lawsuit on May 2, 2023 (*see id.* 1), served Defendant on May 4, 2023 (*see* Return of Serv. [ECF No. 6]), and filed the present Motion on May 8, 2023 (*see* Mot. 1). On May 30, 2023, Defendant's Attorney sent the email requesting that HPD not enforce the Solicitation Ordinances, in direct response to the present case and Motion. (*See* Mot., Ex. B, May 30–31, 2023 Emails [ECF No. 20-2] ("[I]t does not make sense to drag out a case that [Defendant] will very likely lose, and have to pay additional attorney's fees . . . . As a result, I am requesting that [Defendant] cease issuing violations under any of the three highlighted ordinances[.]" (alterations added)).

While the timing of the nonenforcement directive is suggestive of an attempt to manipulate jurisdiction, *see Walker*, 901 F.3d at 1270, the Court need not presume Defendant's intentions from the suspicious timing of its actions. Yet, Defendant presents no "explanations independent of this litigation which may have motivated it." *Id.* (citation and quotation marks omitted). Plainly, then, Defendant's issuance of a nonenforcement letter and assertion of mootness in response to Plaintiff's Motion is aimed to deprive the Court of jurisdiction. The Court will not reward such efforts. *See Sec'y of Lab., U.S. Dep't of Lab.*, 955 F.2d at 684 (noting that "it is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of

repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." (alteration adopted; quotation marks and citations omitted)).

Moreover, Defendant's informal, backroom actions are otherwise insufficient to establish a reasonable expectation that Defendant will not reverse course. *See Djadju*, 32 F.4th at 1109. As noted, Defendant argues the request for a preliminary injunction is moot because its Attorney instructed the HPD not to enforce the Solicitation Ordinances and the City Attorney has begun drafting a repeal ordinance. (*See generally* Resp.). Defendant insists that Plaintiff need not fear enforcement of the Solicitation Ordinances and that it will pass the repeal ordinance as soon as the summer break is over, at the first City Commission meeting in September. (*See id.* 5). These actions are not "unambiguous," because they are neither "permanent" nor "complete[.]" *Djadju*, 32 F.4th at 1109 (alteration added).

When a statute has been formally amended or repealed, constitutional challenges are "routinely found moot[.]" *Seay Outdoor Advert., Inc. v. City of Mary Esther, Fla.*, 397 F.3d 943, 947 (11th Cir. 2005) (alteration added; citations omitted); *see also Troiano*, 382 F.3d at 1283–85 (collecting cases); *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1268 (11th Cir. 2020) (that government defendants receive additional leeway is "especially true when . . . a government defendant has *formally* rescinded a challenged statute, ordinance, rule, or policy." (alteration and emphasis added)). Defendant admits it has not formally repealed the Ordinances; it has only taken unidentified actions to "beg[i]n the process of repealing the challenged sections[,]" sent an email directing HPD "to stop enforcing" the Ordinances, and "is in the process of drafting" a repeal ordinance. (Resp. 1, 5 (alterations added)).

Defendant does not identify a case where a court has found no reasonable expectation of reoccurrence based on actions taken informally and behind closed doors, like Defendant admits it

9

did here. (*See generally id.*); *see also Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority . . . forfeits the point. [The Court] will not do his research for him." (alterations added; citations omitted)).

Quite the opposite. Backroom actions to cease enforcement typically do not support a finding that there is no reasonable expectation of reoccurrence. "Short of repealing a statute, if a governmental entity decides in a clandestine or irregular manner to cease a challenged behavior, it can hardly be said that its 'termination' of the behavior is unambiguous." *Harrell*, 608 F.3d at 1266–67.

In *Harrell*, the Eleventh Circuit found that when the government acted "in secrecy, meeting behind closed doors, and, notably, fail[ed] to disclose any basis for its decision" not to enforce the allegedly illegal Bar rules, it did "not suffice to moot the [] controversy." *Id.* at 1267 (alterations added); *see also Chandler v. Kopelousos*, No. 11-cv-262, 2011 WL 1791299, at *4 (M.D. Fla. May 10, 2011) *rev'd on other grounds by Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194 (11th Cir. 2012) (finding case was not moot where a detained motorist complained about a policy and the agency immediately stopped practicing the policy in order to research whether the policy was unlawful); *Rosemere Neighborhood Ass'n v. U.S. Env't Prot. Agency*, 581 F.3d 1169, 1173 n.3 (9th Cir. 2009) (noting that generally, mootness does not follow from a governmental entity's "'announcement of an intention to change or adoption of a plan to work toward lawful behavior'" (quoting 13C Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Juris. § 3533.7 (3d ed. 2008))).

Here, Defendant has, at best, *begun* to take action to repeal the challenged Ordinances. (*See* Resp. 1, 5). Even if Plaintiff became aware of Defendant's intention not to enforce the

Solicitation Ordinances during this lawsuit, Defendant admittedly has not repealed the Ordinances and remains free to "later change its mind." *Harrell*, 608 F.3d at 1265. Given Defendant's failure to complete formal action to repeal the Solicitation Ordinances, its actions cannot be considered "permanent and complete[.]" *Djadju*, 32 F.4th at 1109 (alteration added; citation omitted).

As to the last *Djadju* factor — whether the new policy has been consistently enforced — there is no suggestion that Defendant has been applying the new nonenforcement policy inconsistently since sending the May 30, 2023 email ordering nonenforcement. But no one factor is dispositive, *see id.*, and the other factors strongly suggest that there is a reasonable expectation Defendant's nonenforcement policy will change, since the Solicitation Ordinances are still in effect and the policy change seems aimed at avoiding jurisdiction. Because Plaintiff has rebutted the *Troiano* presumption,[1] the voluntary cessation doctrine applies, and for the same reasons, Defendant "has not borne its heavy burden of showing that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Harrell*, 608 F.3d at 1268 (emphasis omitted; quoting *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1131 (11th Cir. 2005)).

### ii. Irrevocable Eradication of Effects

The Court now turns to the second part of the mootness test, namely, whether "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631; *see Owens v. Centurion Med.*, 778 F. App'x 754, 758 (11th Cir. 2019)

---

[1] Even though *Djadju* suggests the *Troiano* presumption applies in all government-defendant cases, *see* 32 F.4th at 1109, in *Harrell*, the court concluded that the *Troiano* presumption did not apply because the government's actions were ambiguous, *see* 608 F.3d at 1266–68. Arguably, the Court could reach the same conclusion here as the *Harrell* court did, since Defendant acted informally and behind closed doors, in which case the heavy burden would remain with Defendant. *See id.* Whether the Court couches its analysis as Plaintiff rebutting the presumption or the presumption not applying here, the outcome is the same: the case is not moot.

("both conditions" must be satisfied for a case to be moot (citation omitted)). The answer to this question is "no," because the Solicitation Ordinances have not been repealed. *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) ("[S]ince moratorium by its terms is not permanent . . . . [i]ntervening events have not 'irrevocably eradicated the effects of the alleged violation." (alterations added; citation and quotation marks omitted)); *Karuk Tribe of Ca. v. U.S. Forest Serv.*, 681 F.3d 1006, 1019 (9th Cir. 2012) (finding temporary moratorium did not irrevocably eradicate effects). Indeed, there is nothing irrevocable about the nonenforcement policy, which is at the whim of Defendant's current City Attorney.

In sum, Defendant's voluntary cessation of the challenged conduct in direct response to this litigation does not moot Plaintiff's request for a preliminary injunction. Absent repeal of the Solicitation Ordinances, Defendant fails to persuade that Plaintiff can reasonably expect Defendant will not reverse course or that the effects of the alleged violation have been irrevocably eradicated.

### B. Preliminary Injunction

To obtain a preliminary injunction, a plaintiff bears the burden of persuading a court of (1) "a substantial likelihood of success on the merits; (2) the preliminary injunction is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the preliminary injunction would cause to the non-moving party, and (4) the preliminary injunction would not be adverse to the public interest." *Oce N. Am., Inc. v. Caputo*, 416 F. Supp. 2d 1321, 1324–25 (S.D. Fla. 2006) (citing *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001); other citations omitted). Defendant's sole argument as to these elements is cursory and relates only to the second inquiry — whether Plaintiff will suffer irreparable harm. (*See* Resp. 5–6). The Court considers each element and finds Plaintiff has satisfied his burden and is

entitled to a preliminary injunction.

### 1. Success on the Merits

Plaintiff argues that the Solicitation Ordinances violate the First Amendment both facially and as applied. (*See* Mot. 8–19). "[T]he City has chosen not to defend" the Solicitation Ordinances as constitutional. *Messina v. City of Fort Lauderdale*, 546 F. Supp. 3d 1227, 1252 (S.D. Fla. 2021) (alteration added; citations omitted). It has "thus waived any such arguments." *Id.* (citations omitted).[2] Additionally, the Court is persuaded that "the very heavy weight of authority" suggests that Plaintiff is likely to succeed in showing that the Solicitation Ordinances are unconstitutional content-based restrictions on speech. *See, e.g.*, *id.* at 1242–43 (collecting cases).

### 2. Irreparable Injury

Defendant's singular argument as to the preliminary injunction factors is that "Plaintiff cannot meet the requisite elements for an injunction (i.e., a showing of irreparable harm), as the conduct is no longer prohibited." (Resp. 6). But "the mere discontinuance of infringing conduct does not render injunctive relief inappropriate[,]" as "the past violations" create "a cognizable danger of future violations[.]" *Clayton v. Howard Johnson Franchise Sys. Inc.*, 730 F. Supp. 1553, 1558 (M.D. Fla. 1988) (alterations added; citations omitted). In *Burger King Corp. v. Weaver*, 33 F. Supp. 2d 1037, 1040 (S.D. Fla. 1998), for example, the court concluded that the plaintiff was entitled to injunctive relief because the defendant "willfully violated" the plaintiff's trademark rights and "failed to cease his actions until [the plaintiff] sought injunctive relief[.]"

---

[2] When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned. *See, e.g.*, *Hartford Steam Boiler Inspection & Ins. Co. v. Brickellhouse Condo. Ass'n, Inc.*, No. 16-cv-22236, 2016 WL 5661636, at *3 (S.D. Fla. Sept. 30, 2016) (determining the plaintiff "implicitly condede[d]" a point by failing to address the defendant's abstention argument in response to a motion to dismiss (alteration added; quotation marks and citation omitted)); *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (quoting *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001)).

*Id.* (alterations added). Here, too, Defendant did not take steps to cease its conduct until after Plaintiff sought injunctive relief and following multiple alleged violations over the past three years. (*See generally* Compl.; Mot.).

Additionally, Plaintiff alleges ongoing injury, since his "speech is being chilled" by the fear of enforcement. *Austin v. Univ. of Fla. Bd. of Trustees*, 580 F. Supp. 3d 1137, 1173 (N.D. Fla. 2022). "The Eleventh Circuit has repeatedly held that harms to speech rights for even minimal periods of time, unquestionably constitute irreparable injury supporting preliminary relief." *Id.* (alterations adopted; citation and quotation marks omitted); *see also Messina*, 546 F. Supp. 3d at 1253. The Court has already concluded that Plaintiff has a reasonable expectation that the City will reverse course and begin enforcing the Solicitation Ordinances once more. Plaintiff's fear of enforcement, then, is well-founded, and the chilling effects of such fear on Plaintiff's First Amendment rights are "precisely what the law means when it speaks of irreparable injury." *Messina*, 546 F. Supp. 3d at 1253.

**C. Balance of Harms**

Plaintiff insists that the ongoing injury to him outweighs any harm to Defendant. (*See* Mot. 3–4). The Court agrees.

As the Court explained, Plaintiff's allegation that the not-yet-repealed Solicitation Ordinances are chilling his speech is enough to establish "serious and substantial injury." *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010) (quotation marks and citation omitted). In contrast, Defendant has not demonstrated any harm that would result from the Court's issuance of a preliminary injunction. (*See generally* Resp.). Certainly, it is difficult to see how Defendant could be harmed by the issuance of a preliminary injunction, considering it has already taken steps to voluntarily cease enforcement of the Solicitation Ordinances. *See Burger King Corp.*,

33 F. Supp. at 1040 ("If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [P]laintiff substantial protection of its [rights]." (alteration adopted; other alterations added; quotation marks and citation omitted)).

### D. Public Interest

Finally, Plaintiff is correct that the preliminary injunction would not be averse to the public interest. (*See* Mot. 19–20). The Eleventh Circuit has "held that the public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law." *Scott*, 612 F.3d at 1297 (citations omitted). "The public interest does not support the city's expenditure of time, money, and effort in attempting to enforce an ordinance that may well be held unconstitutional." *Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 959 (5th Cir. 1981) (citation omitted). Defendant again does not address this point and therefore concedes it. *See Hartford Steam Boiler Inspection & Ins. Co.*, 2016 WL 5661636, at *3. Given the Court's conclusion — and Defendant's concession — that Plaintiff is substantially likely to succeed on the merits, the requested preliminary injunction is not against the public interest.

### IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 8]** is **GRANTED**. Defendant is **PRELIMINARILY ENJOINED** from enforcing sections 122.27, 122.31, and 122.54 of the City of Hollywood, Florida Code of Ordinances during the pendency of this suit.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of July, 2023.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record